Kenneth Sachs
2062 E Southern Ave #1199
Tempe, AZ 85282
480-544-4050
kennyharlan@gmail.com

Plaintiff in *pro per*

FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 21 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KENNETH SACHS, | Case No.: CV-22-430-PHX-SMB |
| Plaintiff, | |
| vs. | **PLANTIFF'S COMPLAINT** |
| Heidi Quinlan LPC, LISAC, | |
| Defendant | |

NOW COMES Kenneth Sachs, Plaintiff, and files this Complaint against Heidi Quinlan, Defendant, and for cause would show this Honorable Court as follows:

**PARTIES**

PLAINTIFF'S ORIGINAL COMPLAINT   1

1. Plaintiff Kenneth Sachs known address is in Maricopa County, Arizona

2. Defendant Heidi Quinlan (hereinafter referred to as "Quinlan") known business address is **3048 E. BASELINE RD., #107  Mesa, Arizona 85204**

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S. Code § 1343 (civil rights).

4. Venue is proper in this Court in accordance with 28 U.S. Code § 1391(b) which states that:

"A civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." All the events and/or omissions that give rise to the causes of action in this Complaint took place in the State of Arizona.

## FACTS

5. On 12th September, 2019 the Court appointed Quinlan as Behavioral Health Professional to serve as the Therapeutic Interventionist (TI) in *Re the Matter of: Maryna Sachs and Kenneth H. Sachs*, case number FC 2013-053729.

6. Quinlan was appointed to conduct court-ordered independent psychological evaluation of Plaintiff.

7. On **21st May, 2020, Quinlan** submitted a report before the Superior Court of

Arizona, Maricopa County. **Exhibit 1**. The report contained numerous falsities against Plaintiff. The honorable judge of the Superior Court of Arizona, Maricopa County, Hon. Dawn M. Bergin, relied on the falsities made on Plaintiff's evaluation report to revoke Plaintiff's parenting time, leaving him with supervised visits only.

8. The falsities are the direct cause for Plaintiff's parenting time reduction to supervised visits only. The Defendant's report is in direct correlation to the Judge's decision to limit Plaintiff's time with his child. This report was based upon false information, bias and personal thoughts rather than actual facts. This report and the resulting decision by the Court has caused permanent damage to the relationship that Plaintiff shares with his daughter during her formative years. Additionally, the decision by the Court has placed Plaintiff's daughter in a emotionally dysfunctional and threatening environment.

9. Heidi Quinlan knew that the honorable judge would rely on her report to make the decision but she still went ahead and lied on the report to the detriment of Plaintiff.

10. Defendant used her position as court appointed Therapeutic Interventionist to exert authority and influence the Court to make a decision regarding the welfare of a child. This is a direct abuse of power as Defendant did not present actual facts based on medical evidence. Defendant relied on reports from outside sources who

presented information that was not factual.

## CAUSES OF ACTION

### Perjury

11. Plaintiff hereby incorporates the facts in paragraphs 1-10 of this Complaint as though set forth fully herein.

12. ARS § 13-2702 provides that: "A person commits perjury by making either: (1) A false sworn statement in regard to a material issue, believing it to be false, a false unsworn declaration, or (2) A false unsworn declaration, certificate, verification or statement in regard to a material issue that the person subscribes as true under penalty of perjury, believing it to be false."

13. Defendant committed perjury by presenting the Court with evidence that she deemed as 'fact' but rather it was formed by her own opinion that was based in bias and not medical evidence. For example, the statement "Youngster continues to display significant unhealthy enmeshment with father." (Exhibit 1) is completely reflective of an opinion not based upon medical evidence. What constitutes unhealthy is completely subjective.

14. Quinlan made statements that she did not believe to be true in the report she was asked to conduct by the honorable judge of the Superior County of Arizona, Maricopa County. The statements were used by the honorable judge to make a

PLAINTIFF'S ORIGINAL COMPLAINT    4

determination that limited Plaintiff's parental rights to supervised visitation only.

15. By committing perjury in Plaintiff's evaluation, Defendant committed a Class 4 felony under the laws of Arizona. Defendant made false statements in the evaluation she was asked to conduct by the Superior Court of Arizona, Maricopa County.

16. The evaluation was crucial as it was relied upon by the judge to make a determination only to allow Plaintiff supervised visits. Defendant knew that the Court would rely on her evaluation when determining custody. Despite that, Defendant made false statements in the report.

17. Plaintiff has suffered mental anguish and suffering due to his reduction of parenting time to supervised visits only. Plaintiff's relationship with his child has been damaged due to reduction of the time and quality of his visits with his daughter based on the subjective opinion and false information by Defendant.

## Gross Negligence

18. Plaintiff hereby incorporates the facts in paragraphs 1-17 of this Complaint as though set out in full herein.

19. In another report on 03/18/20, Heidi Quinlan mentioned that plaintiff disrespects the parenting time by court which is incorrect. The evaluation was made on fact that Maryna came from an international trip after which she had to quarantine so

PLAINTIFF'S ORIGINAL COMPLAINT    5

plaintiff and Maryna Sachs mutually agreed on letting plaintiff keep Youngster for 14 days. Two days later Heidi Quinlan demanded Youngster to go to Maryna's, claiming that plaintiff disobeyed the court's order and showed such unprofessional conduct by not understanding or even listening to the plaintiff's side of story.

20. On 2nd June, 2020 plaintiff mailed Heidi Quinlan, Maryna Sachs, Robert DiCarlo and Kelli Benavides telling them that he was contacted by Law enforcement, FBI and they reached out to Childhelp, and told him that Youngster is on the waitlist for Trauma Therapy to which defendant Heidi Quinlan refused and claimed that Youngster will not be needing the appointment and can be taken off the waitlist knowing that she needs the therapy.

21. Defendant had a duty to ensure that her evaluation reflected a true account of events.

Defendant was aware that her evaluation would be used by the honorable judge of the Superior Court of Arizona, Maricopa County and had a professional obligation of honest evaluation. Defendant breached this duty and included false assertions against Plaintiff in the evaluation that were based on opinion rather than fact. As a result of that breach, the honorable judge relied on the falsified evaluation and reduced Plaintiff's parenting time to supervised visits only. Plaintiff has endured, and continues to endure, suffering as he can only see his daughter during

supervised visits only.

### Violation of Constitutional Right to Parent a Child

22. Plaintiff hereby incorporates the facts in paragraphs 1-18 of this Complaint as though set out fully herein.

23. In this lawsuit, Plaintiff avers that his Fourteenth Amendment rights under the United States Constitution were violated Defendant. Section 1 of the Fourteenth Amendment provides as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

24. Plaintiff was deprived of the familial right of association embodied in the concept of liberty in the Fourteenth Amendment without due process. "Today we hold that the Due Process Clause of the Fourteenth Amendment demands more than this. Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer, 455 U.S. 745 (1982).

PLAINTIFF'S ORIGINAL COMPLAINT      7

25. Defendant interfered with Plaintiff's familial right of association by presenting a biased and unfair evaluation and recommendation and using her position of power to create a false mental picture to the Court, leading to its use by the honorable judge to reduce Plaintiff's parenting time to supervised visitation only.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant him the following reliefs:

a. Grant judgment in favor of Plaintiff

b. Plaintiff requests a jury trial in lieu of a judgment by the Court due to the sensitive nature and history of this matter. Plaintiff requests that the jury is made abreast of the following requests for relief -

c. Damages for perjury, gross negligence and violation of Fourteenth Amendment rights in the sum of $10,000,000

d. Award Plaintiff punitive damages

e. Award Plaintiff pre and post judgment interests, costs of this suit and attorney fees as allowed by law

f. Award Plaintiff such equitable relief as may be appropriate under the circumstances; and

g. Award Plaintiff such further relief as this Honorable Court deems necessary and proper.

DEMAND FOR JURY TRIAL

Plaintiff **Kenneth Sachs,** hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure as to all issues or claims for which a jury trial is allowed.

Dated this 21th day of March, 2022.

Respectfully Submitted,

_____
Kenneth Sachs

Plaintiff in *pro per*

PLAINTIFF'S ORIGINAL COMPLAINT     9

# EXHIBIT #1

Heidi Quinlan LPC, LISAC
COUNSELING SERVICES OF ARIZONA
3048 E. BASELINE RD., #107
Mesa, Arizona 85204
Telephone: (480)229-9167
Facsimile: (602)429-8082
Email: heidiquinlan@counselingservicesofaz.com

*Therapeutic Interventionist*

ARIZONA SUPERIOR COURT
COUNTY OF MARICOPA

| | | |
|---|---|---|
| In Re the Matter of: | ) | Case No.: FC2013-053729 |
| | ) | |
| Petitioner: | ) | THERAPEUTIC |
|     MARYNA SACHS | ) | INTERVENTIONISTS'S |
| and | ) | REPORT & RECOMMENDATIONS |
| | ) | (Dated 5/21/20) |
| Respondent: | ) | |
|     KENNETH SACHS | ) | Assigned to the Hon. Dawn M. Bergin |

Your Honor:

On 9/12/19 the Court appointed this Behavioral Health Professional to serve as the Therapeutic Interventionist (TI) to advise the Court in the above referenced matter. The parties have One (1) minor child in common, ██████Sachs (10/23/2007). The Court appointed this TI specifically for the purpose of family intervention. Further, the Minute Entry dated 9/12/19 details direction for this TI, "*1)gather data and inform the Court regarding family dynamics and functioning and 2) create desired change in individuals and families.*" and "This Court Intervention Appointment is specifically intended for the purpose of: Reunification (specifically between the child and mother), to more closely approximate the parenting time as written in the Court Order, and Intervention aimed at supporting a renewed relationship between mother and daughter."

The following provides an update for the Court:

<u>Noteworthy session dates and occurrences:</u>

**Honorable Dawn M. Bergin**
FC 2013-053729

- TI has had several phone conversations with mother to answer questions of how sh is to respond to father's demands or requests, XXX demands or emotions, or to alert me of situations with father occurring in real time;
- TI has spoken to DCS;
- TI has had several phone staffing with Dr. DiCarlo;
- TI has consulted with Dr. Branton;
- TI has spoken with the BIA a couple of times;
- Emails have been exchanged with BIA, XXX therapist, and the parties;
- Father and mother have copied TI on email exchanges and we have exchanged text messages;

**Father Interference with Mother's Parenting Time and Threatening to Keep XXX from Mother Indefinitely:**

- In spite of this Court ordering father to avoid talking to daughter about any new theater or acting roles/auditions, father has attempted to interfere with mother's parenting time on at least two occasions since the last status conference:
  - The first attempt was 4/16/20 by showing up at mother's door, pounding, honking his horn and disturbing the peace while demanding daughter be able to refilm an audition she already recorded and submitted, but wanted to resubmit. Mother had given permission for dad to call to do a voice lesson with daughter, but he demanded daughter come with him to refilm. Mother reports daughter was anxious and emotional in her apartment, not knowing how to respond to father's behavior. TI got involved and informed father he needed to follow the Corut-Ordered parenting time, and leave the premises before mother or one of her neighbor's contacted the police. Father complied and TI informed the coparents that mother was more than capable of doing the refilming with daughter if she chose;
  - The second was the week of April 27th when daughter arrived at mother's home after parenting time with dad stating there was a new production she had researched and wanted to audition for. Mother informed her they could discuss it, and if they agreed to pursue the opportunity, mother would assist her that week. Daughter became highly emotional, claiming only father could help her. Father texted mother telling her to let daughter come to his home to film the audition for the TV show. It was later revealed that father purchased new recording equipment for this audition and was aware of the dates for submission of daughter's audition. Mother declined and stated she would address it. Mother had previously offered to daughter earlier that month to purchase new recording equipment so daughter could feel more comfortable recording approved auditions, etc. at mother's home to avoid such incidents. Daughter had declined. Daughter met with Dr. Dicarlo on Thursday that week and expressed suicidal ideation because mother was ruining her life by not allowing her to record her audition with

Page 2 of 7

**Honorable Dawn M. Bergin**
FC 2013-053729

    father. Dr. DiCarlo created a safety plan with daughter in cooperation with mother, and suggested father drop off the recording equipment with mother to allow mother to help daughter film her audition if mother approved. Father declined and blamed mother for daughter's suicidal ideation. Dr. DiCarlo checked in with daughter later and she reported watching a comedy movie with mom, feeling relaxed and no thoughts of self-harm. Father made claims that this might have been a lie because mother didn't own a TV, dismissing the report of his own daughter and that movies can be watched on a variety of technological devices;

- After the 4/8/20 ruling was issued regarding the increase in mother's parenting time, a DCS report was filed that repeated all past allegations father has alleged of mother over the years, but no new information. DCS opened an investigation and closed the case as unsubstantiated on 4/21/20. DCS made a recommendation that daughter continue counseling. Upon receiving the news that the DCS case had been closed, father ensured that all providers involved in the case understood there were former police reports with open investigations pending;

**Noteworthy Reports Regarding ▰▰:**
- ▰▰ continues to display significant unhealthy enmeshment with father;
- ▰▰ appears to get along well with mother most of the time unless there is contact with father or discussion with father about theater/acting business or opportunity;
- ▰▰ continues to see Dr. Robert DiCarlo for therapy, and he has continued to prescribe needing to see her weekly;
- During daughter's therapy session on 4/20/20, daughter, when alone with Dr. DiCarlo, stated things with mother were going well, they were communicating fine with what was described as typical parent/adolescent disagreements, and she listed activities they had been doing together. When mother joined the session, daughter began to secretly record the session and became instantly highly emotional, saying mother yells and criticizes her. Dr. DiCarlo expressed confusion, and noted the incongruence in daughter's statements and emotionality. He also noted her lack of emotional triggers to comments daughter may have reacted to, but exaggerated overreaction to seemingly benign statements of mother. DrDicarlo was informed of the recording by mother, who noticed it during the session, but wanted advice about how to address it with daughter. The session appeared to both adults as an attempt to set up mother, but Dr. DiCarlo reported there was not notable concern in mother's responses nor demeanor during the session;
- Dr. DiCarlo has expressed concern about the effects of father's statements and interactions on daughter's overall wellbeing and long-term mental health. Based on statements from daughter, he expressed that until father stops involving daughter in coparenting and emotional issues, daughter will struggle with achieving mental health stability;

**Honorable Dawn M. Bergin**
FC 2013-053729

- Daughter continues to display catastrophic thinking over even minor issues, is unable to accept any feedback or criticism with emotion regulation [which contributes to mother's inability to parent], displays poor self-worth, has poor social skills, and displays manipulative behaviors;
- Father has misrepresented diagnostic paperwork from Dr. DiCarlo to attempt to unilaterally obtain trauma counseling for daughter from Childhelp as a "Victim of a Crime" in spite of not evidence supporting this claim;
- Father has been informed by this TI to stop this behavior and pursuit, and that daughter will be continuing therapy with Dr. DiCarlo;
- Father has also harassed Dr. DiCarlo's office regarding payment, asking for forms, and Dr. DiCarlo's office to submit documentation to AHCCCS for him in spite of signing forms and being informed at the beginning of counseling that Dr. DiCarlo's office did not work with insurance and was only private pay;

**<u>Noteworthy Reports Regarding Father:</u>**
- Father continues to display highly concerning behaviors regarding enmeshment and emotional collaboration with daughter, which often undermines daughter's relationship with mother;
- Father has refused to give mother the password to daughter's phone. Daughter refuses to give mother the password t daughter's phone. Father contacts daughter frequently by text during mother's parenting time, affecting daughter's interactions and emotionality when with mother;
- Father continues to disregard parenting time orders;
- Father continues to make allegations about mother to outside public agencies regarding old issues which have never been proven nor actively investigated past the initial inquiry in the beginning;
- Father continues to be insulting to mother, telling her to "get lost" and stating she is immoral and bad for daughter to providers;
- Dr. Branton's psychological evaluation documents that father's current diagnostic impressions consist of:
  - Delusional Disorder, Persecutory Type
  - Unspecified Personality Disorder with traits of Narcissistic, Obsessive-Compulsive, and Paranoid Personality Disorders;
- Dr. Branton's report also details the significant detrimental effect father is having on daughter's emotional wellbeing and relationship with mother due to his own mental health instability;
- Dr. Branton suggested that father's unmonitored, unrestricted access to daughter could reinforce delusional beliefs and a false narrative of mother;

**Honorable Dawn M. Bergin**
FC 2013-053729

- Dr. Branton suggested father's interactions with daughter are a form of unintentional child abuse, and that the Court order changes in father's access to the child;
- Dr. Branton also states father is unable to coparent with mother at this time without significant treatment;

**Noteworthy Reports Regarding Mother:**

- Mother has reached out to this TI appropriately for advice about how to address real time interactions with father and daughter prior to acting to avoid impulsive reactions or unintentionally making the situations worse. The real time interventions have been helpful in preventing situations from escalating;
- Mother continues to be open to feedback about how to manage ▮▮ extreme emotionality toward her. However, most of the time, ▮▮ is calm and cooperative with mom;
- ▮▮ does continue to try to be the boss or parent with mom, demanding vs. asking. Mother has gradually been increasing her parental confidence and authority with daughter in appropriate ways to right the inverse parent-child hierarchy that was occurring;
- She continues to need coaching to trust her parental instincts, and suppress fears about intense emotional reactions from daughter;
- Mother continues to work on being assertive, objective, clear, and firm with father to avoid miscommunication;

- This TI has not had in-person sessions between ▮▮ and mother in my office, but has coordinated care with the other members of the team as they work with daughter to address her concerning mental health and perception of mother, evaluate father for psychological concerns and effect on coparenting and on his daughter, advocate for daughter's overall wellbeing, and coach mother and father to coparent appropriately in the best interests of their daughter;

TI Goals:
1. ▮▮▮▮▮ will report feeling validated and supported by mom, that mom knows her as an individual, and they are communicating and working through conflict effectively;
2. Mom will report an increase in rapport with her daughter, and improvement in how they resolve conflict.
3. The coparents will display objective, proactive, emotionally regulated communication and conflict resolution skills;

Progress Toward Goals:

**Honorable Dawn M. Bergin**
FC 2013-053729

1. ▓▓ states she and mother can get along fine usually. ▓▓ continues to accuse mother of yelling at her and criticizing her, which appears to be a false narrative and inaccurate perception as determined by the providers involved. ▓▓ perception of reality and influence by father appear to be highly skewed and concerning;
2. Both mother and ▓▓ report they generally get along during mother's parenting time and have few conflicts. However, ▓▓ continues to be negatively influenced by father during mother's parenting time;
3. The coparents continue to have relatively little interaction. They are able to exchange logistical information, which is sometimes misrepresented by father. However, father continues to display alienating behaviors, interference of mother's parenting time, accuse mother of various crimes, and insult mother;

Barriers Toward Progress:
 1. Father's continued alienating behaviors and lack of insight about the effect of his actions on his daughter;

TI Plan/Recommendations for the Court to consider and adopt:
1. TI recommends the Court consider a change in parenting time due to father's continued active alienation behaviors and lack of insight about his negative effect on the mental health and wellbeing of his daughter;
2. TI recommends father, mother and ▓▓ each engage in individual counseling with forensically-informed therapists from the Court Roster to build insight about their contribution to the current dynamic, improve self-awareness and use of emotion regulation tools, increase their education about resist-refusal family dynamics, developmentally appropriate parent-child roles and psychology. Father will also need a provider who is qualified to address personality disorders;
3. TI recommends daughter be psychologically evaluated to determine any emerging pathology needing to be addressed;
4. TI recommends each parent take the online course: Parenting w/o Conflict class by Bill Eddy and New Ways fo Families which can be accessed at www.onlineparentingprograms.com and submit a certificate of completion to the Court and this TI;
5. TI recommends mother and ▓▓ continue to meet for TI sessions;
6. TI recommends mother and father engage in coparenting work at a future time when father's provider can report progress in father's insight about his behaviors on daughter and the mother-daughter relationship;

*This TI attests that she has met statutory and regulatory requirements for continuing education.*

**Honorable Dawn M. Bergin**
FC 2013-053729

**RESPECTFULLY SUBMITTED** on this 21st day of May 2020.

*Heidi Quinlan*
**Heidi Quinlan, L.P.C., L.I.S.A.C.**
*Therapeutic Interventionist*

Copies of the foregoing have been emailed to the legal representative and to the judge electronically on 5/21/20:

To:

**HONORABLE DAWN M. BERGIN**

| | |
|---|---|
| Petitioner: | Maryna Sachs (maryna.sachs@outlook.com) |
| Attorney for Petitioner: | James Wees (james@weeslawfirm.com) |
| Respondent: | Kenneth H. Sachs (kennyharlan@gmail.com) |
| Attorney for Respondent: | Ryan Hardy (ryan@hardylawaz.com) |